UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **LLOYD BILLITER JR.,** | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| VS. | § | Civil Action No. 4:14-cv-00663 |
| | § | |
| **CENTRAL MORTGAGE COMPANY,** | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**PLAINTIFF/COUNTER-DEFENDANT LLOYD BILLITER'S MOTION FOR FINAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff/Counter-Defendant Lloyd Billiter ("Plaintiff" or "Mr. Billiter") files this Motion for Final Summary Judgment against Defendant/Counter-Plaintiff Central Mortgage Company ("Defendant" or "Central Mortgage"), and submits this Brief in Support Thereof. The Court should grant judgment in Mr. Billiter's favor for the following reasons:

1. Central Mortgage's home equity lien on Mr. Billiter's homestead is void because it violates two important provisions of the Texas Constitution, including:

    i. TEX. CONST. art. XVI, §50(a)(6)(E)'s 3% limitation on closing costs and fees that may be charged by the lender; and

    ii. TEX. CONST. art. XVI, §50(a)(6)(Q)(ix)'s requirement that the borrower and lender acknowledge the homestead's fair market value at closing.

2. As a result of Defendant's above-mentioned violations of the Texas Constitution and failure to timely cure these violations, Plaintiff is entitled to summary judgment on his claim for declaratory judgment, as well all of Defendant's counterclaims, including its claim for

1

foreclosure.

3. Central Mortgage's claim to foreclose based on Mr. Billiter's alleged breach of contract fails because Central Mortgage failed to perform *its own obligations* under the security agreement. Central Mortgage has not satisfied all conditions precedent to a breach of contract claim. It seeks to foreclose pursuant to the power of sale in paragraph 22 of the deed of trust because of Mr. Billiter's alleged default. *See Security Agreement, attached as Exhibit 1*. However, Central Mortgage failed to perform its obligations stated under paragraph 19 of the agreement because it did not "cure" its violation of TEX. CONST. art. XVI §50(a)(6)(Q)(ix) and §50(a)(6)(E) within 60 days of the notice to cure. As such, Central Mortgage's request to foreclose on Mr. Billiter's home fails as a matter of law.

I. NATURE AND STAGE OF PROCEEDING

4. Mr. Billiter filed this lawsuit on February 11, 2014 asserting that Central Mortgage violated multiple provisions of the Tex. Const. art. XVI, § 50(a)(6). Because Central Mortgage failed to timely cure[1] any of its constitutional violations, Plaintiff sought a declaration that the subject lien is void and that Defendant must forfeit all principal and interest on the loan. Additionally, Central Mortgage must reimburse Mr. Billiter for all payments that have been made since the loan's inception in 2011.

5. Defendant subsequently removed the case to this Court on March 17, 2014.

6. On May 8, 2014, Defendant filed its Answer and asserted counterclaims against Plaintiff seeking, among other relief, an order to foreclose. However, Defendant has neither accelerated the maturity of the loan nor sent Plaintiff a notice of foreclosure.

---

[1] Central Mortgage has not made any attempts to cure its constitutional violations.

## II.     STATEMENT OF FACTS

7.      On January 25, 2011, Lloyd Billiter executed a Texas Home Equity Note in favor of Royal United Mortgage, LLC for a refinance transaction of his homestead. Mr. Billiter simultaneously executed a Texas Home Equity Security Instrument (the "Mortgage") with the lender. *See Exhibit 1.* Central Mortgage Company asserts that it is currently the noteholder.

8.      The Texas Constitution limits the lender to charging Mr. Billiter fees of $2,902.50 (3% of the $96,750 loan amount) at closing. *See* §50(a)(6)(E). However, the lender in this case charged Mr. Billiter fees of at least $4,610.83, or 4.77% of the loan amount at closing. *See HUD Settlement Statement, attached as Exhibit 2*. The fees charged are as follows:

| Charge | Amount Charged | Line on HUD | Subject to 3% Cap by Texas Administrative Code |
|---|---|---|---|
| Origination Charge Paid to Lender | $ 2,297.81 | Line 803 | 7 TEX. ADMIN. CODE §153.5(6) – charged to originate loan |
| Appraisal Fee | $ 410 | Line 804 | 7 TEX. ADMIN. CODE §153.5(8)- charged to evaluate loan |
| Credit Report | $ 39.75 | Line 805 | 7 TEX. ADMIN. CODE §153.5(8) - charged to evaluate loan |
| Title Services and Lender's Title Insurance | $ 1,739.27 | Line 1101 | 7 TEX. ADMIN. CODE §153.5(11)- charged to insure loan |
| Government recording charges | $ 124 | Line 1201 | 7 TEX. ADMIN. CODE §153.5(10)- charged to record loan |
| **TOTAL FEES** | **$ 4,610.83** | -------------- | |

9.      Additionally, the lender failed to sign and acknowledge the fair market value on the day of closing. *See "Acknowledgement" of Fair Market Value, Produced in Defendant's Discovery Responses, attached as Exhibit 3.* The acknowledgement of fair market value was not notarized.

3

10. On December 11, 2013, Plaintiff sent Defendant a Notice to Cure, giving Defendant a 60-days opportunity to cure its Constitutional violations. *See Notice to Cure, attached as Exhibit 4.* Nearly one year later, Defendant has not cured its §50(a)(6)(E) nor §50(a)(6)(Q)(ix) violations.

11. After this lawsuit was filed, Plaintiff sent discovery requests to Defendant. In response, and consistent with the records kept by Plaintiff, Defendant produced an acknowledgement of fair market value that was not "acknowledged" by the lender.

### III.  LEGAL STANDARD

12. Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. FED. R. CIV. P. 56.

13. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The movant need only show the absence of evidence to support a claim on issues to which the non-movant bears the ultimate burden of proof at trial. *Id*. at 323-24. Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id*. at 324-25. The non-moving party must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256-57 (1986).

### IV.  ARGUMENT AND AUTHORITIES

#### A. Plaintiff is Entitled to Declaratory Judgment that the Lien is Void

i) Any Home Equity Lien that Fails to Comply With the Texas Constitution Is Void

14. "**No mortgage, trust deed, or other lien** on the homestead **shall ever be valid** unless it

secures a debt described by this section…All pretended sales of the homestead involving any condition of defeasance shall be void." TEX. CONST. art. XVI, § 50(c) (emphasis added).

15. "For over 175 years, Texas has carefully protected the family homestead from foreclosure by limiting the types of liens that can be placed upon homestead property." *LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 618 (Tex. 2007). In Texas, the homestead has always been protected from forced sale, not merely by statute as other states, but by the Constitution. *Fin. Comm'n of Tex. v. Norwood*, 418 S.W. 566, 2013 Tex. LEXIS 491 (Tex. June 21, 2013). When Texas became the last state in the Union to permit home equity liens, the decision was controversial because of "age-old concerns that lenders would be unfair and borrowers unwise, eroding the protection the homestead is intended to afford." *Id*. at 572.

16. Consequently, lawmakers framed strict protections for homeowners where their home equity loan contains provisions, requirements, or other defects that are contrary to the Texas Constitution. TEX. CONST. art. XVI, §§ 50(a)(6)(Q)(x)(a)-(f). The Texas Supreme Court has stated that "Any attempt to mortgage homestead property, except as approved by the Texas Constitution, is void." *See Laster v. First Huntsville Prop. Co.*, 826 S.W.2d 125, 129 (Tex. 1991*); see also Moore v. Chamberlain*, 109 Tex. 64, 195 S.W. 1135 (Tex. 1917); *Florey v. Estate of McConnell*, 212 S.W.3d 439, 447 (Tex. App.-Austin 2006, pet. denied.)); *Laster v. First Huntsville Prop. Co.*, 826 S.W.2d 125, 129 (Tex. 1991)("Any attempt to mortgage homestead property, except as approved by the Texas Constitution, is void.") *citing Burkhardt v. Lieberman*, 159 S.W.2d 847, 850 (Tex. Comm'n App. 1942, opinion adopted).

17. A "homestead lien that did not comply with constitutional requirements at the outset ***can be made valid at a later date" if*** the lender cures the defects within 60 days after receiving

notice. *See Carrington v. Ameriquest Mortgage Co*., 49 S.W.3d 342, 346 (Tex. 2001); *see also Exhibit 1* (the Security Agreement mirrors the Constitution and states that after the lender has had 60 days to comply with §50(a)(6), but fails to comply, "shall all principal and interest be forfeited.").

18. A lender who violates § 50(a)(6) of the Texas Constitution and does not timely cure the defects must "not only **forfeit the right to collect any future payments** called for under the note, but also having to **disgorge any amount already paid under the note**". *See Puig v. Citibank, N.A.*, 2012 U.S. Dist. LEXIS 70398 (N.D. Tex. 2012); *Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo)*, 370 B.R. 681, 698 (Bankr. S.D. Tex. 2007)(ordering lender to refund past principal and interest payments of $4,201.41 because lender violated § 50(a)(6), including closing costs that exceeded the 3% Constitutional cap); *see also Adams v. Ameriquest Mortg. Co. (In re Adams)*, 307 B.R. 549, 553 (Bankr. N.D. Tex. 2004) *citing Thomison v. Long Beach Mortgage Co.*, 176 F.Supp. 2d 714, 718 (W.D. Tex. 2001)(ordering lender to refund payments on principal and interest to homeowner because closing costs exceeded 3% Constitutional cap).

19. Defendant here violated provisions of the Texas Constitution that, when not cured, made the lien void as a matter of law. These violations include § 50(a)(6)(E), which sets the fees and charges to a home equity loan at a 3% maximum limit of the principal loan amount, and §50(a)(6)(Q)(ix), the lender's failure to acknowledge the Fair Market Value at closing. A violation of *any one* requirement of Section 50(a)(6) is enough to render the *entire* lien invalid.

    ii)    <u>3% Closing Cost Violation</u>

20. Defendant violated §50(a)(6)(E), which sets the maximum loan charge to be no more than 3% of the loan amount. Specifically, this provision states:

> The homestead of a family…shall be, and is hereby protected from forced sale, for the payment of all debts except for…an extension of credit that…does not

> require the owner of the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to **originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount** of the extension of credit.

(emphasis added); see *Cerdi v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 795 (5th Cir. 2010);

*Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342 (Tex. 2001).

21. Here, the fees charged should not have exceeded $2,902.50, which was 3% of the $96,750 loan amount. However, as shown above, the fees that were charged to Plaintiff equaled or exceeded $4,610.83. *See Exhibit 2.*

22. An "origination charge" or fee is counted towards the 3% cap as fees that borrowers are required to pay. 7 TEX. ADMIN. CODE §153.5(6) ("Charges to *Originate*. Charges an owner…is required to pay to *originate* an equity loan are fees subject to the three percent limitation.").; *see Cerdi*, at 793 ("[T]hese items count towards the 3% cap…the $10,694 loan origination fee paid to Clarity Mortgage…"); *see also Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 2014 Tex. LEXIS 97, 57 Tex. Sup. Ct. 222 (Tex. 2014). Likewise, the "appraisal fee" and "credit report" fee are considered charges to *evaluate* the loan and are counted towards the 3% cap. 7 TEX. ADMIN. CODE §153.5(8); *see Cerdi*, at 793. "Title services and lender's title insurance" are subject to the 3% limitation because they are charges to *insure* the equity loan. 7 TEX. ADMIN. CODE §153.5(11). Additionally, the "government recording fee" are subject to the 3% limitations because it is a fee charged to *record* the home equity loan. 7 TEX. ADMIN. CODE §153.5(10). All of these fees were charged to Mr. Billiter at closing and clearly fall within "fees" subject to the 3% limitation as defined by TEX. CONST. art. XVI §50(a)(6)(E).

23.     This violation, if not cured upon request, renders the lien invalid *ab initio*. *Doody*, 49 S.W.3d 342 (Tex. 2001); *see also Cadengo v. Consolidated Fund Mgmt., LLC* (*In re Cadengo*), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).

24.     On December 11, 2013, Plaintiff sent Central Mortgage a notice to cure letter, giving Central Mortgage the opportunity to cure its violations of the Texas Constitution § 50(a)(6) within 60 days. *Exhibit 4*. Central Mortgage has taken no action to cure its violations.

25.     The Settlement Statement shows on its face that Defendant charged Plaintiff at least $4,610.83 in closing costs. In the instance that Central Mortgage argues that Plaintiff is including "points" towards the 3% cap, Plaintiff is only including what is clearly marked "origination charge" paid to the lender towards his calculation. Nonetheless, in a recent seminal decision, the Texas Supreme Court has ruled that lenders are prohibited from treating even discount points as "interest" and therefore must include the points in the 3% cap on fees on homestead-secured home equity loans.[2] *Fin. Common of Tex. v. Norwood*, 418 S.W. 566, 575 (Tex. January 24, 2014) ("Broadening 'interest' in Section 50(a)(6)(E) reduces protection [for borrowers from usury]…excluding basically all fees charged by the lender from the cap essentially renders the cap meaningless…contrary to the intent and plain meaning of the constitution.").

26.     There is no issue of fact regarding the amount of the closing costs Defendant charged Plaintiff that exceeded 3% of the loan amount. On this violation alone, the lien must be confirmed as being void *ab initio*, for violating § 50(a)(6)(E) of the Texas Constitution. Central Mortgage must forfeit the remaining balance on the loan and reimburse Mr. Billiter with payments that have already been made since the inception of the loan.

---

[2] Unless the points were *legitimate and true* discount points used to lower the interest rate for the term of the loan.

iii) <u>No Acknowledgement of Fair Market Value at Closing</u>

27. In addition to the "3% cap" limitation, the Texas constitution further provides that not only must the owner of the homestead sign an acknowledgement of fair market value on the day of closing, but the **lender must also execute** the acknowledgement. TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix) ("the owner of the homestead **and** the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made.") (emphasis added). *Ferrell v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 128971 (S.D. Tex. Sept. 10, 2013).

28. After this lawsuit was commenced, Central Mortgage produced an "Acknowledgement of Fair Market Value" within discovery that *actually proves* their non-compliance with §50(a)(6)(Q)(ix). *See Exhibit 3*. Its own production shows that the lender did not execute the acknowledgement of fair market value on the day the extension of credit was made. *See Exhibit 3*. Moreover, the document was not notarized or "acknowledged".

29. To acknowledge a written instrument, the person who executed the instrument must appear before an officer and must state that he executed the instrument for the purposes and consideration expressed in it. TEX. CIV. PRAC. & REM. CODE §121.004. "The general purpose of a formal acknowledgment is to authenticate an instrument as being the act of the person executing the instrument." *Onwuteaka v. Cohen*, 846 S.W.2d 889, 894 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Texas statutes expressly provide that "acknowledged" means "the person personally appeared before the officer taking the acknowledgment and acknowledged executing the instrument by proper authority in the capacity stated and for the purposes and consideration expressed in it." TEX. CIV. PRAC. & REM. CODE §12.006(b)(5).

30. Central Mortgage's discovery production shows that the lender did not acknowledge the

fair market value on the day the extension of credit was made as required by §50(a)(6)(Q)(ix). Because the face of the document shows the absence of the lender's signature on the day of closing and lack of notarization, there is no issue of fact that the document was not acknowledged on the day the extension of credit was made, and this Court may rule as a matter of law. The failure to comply with §50(a)(6)(Q)(ix) alone is sufficient to render the lien void.

### B. Plaintiff is Entitled to Summary Judgment on Central Mortgage's Counterclaims

31. Central Mortgage cannot exercise its power of sale to foreclose because it failed to perform its own obligations in paragraph 19 of the Security Agreement, which is the failure to *cure* its violations of §50(a)(6)(E) and §50(a)(6)(Q)(ix). As such, it does not have a valid lien against Mr. Billiter's homestead, and its claim for foreclosure must be denied.

   i)   Central Mortgage Cannot Prove An Essential Element of Its Claim to Foreclose

32. For Central Mortgage to exercise its power of sale under the contract, it has to show that it performed its own obligations in the contract, all of which are laid out in paragraph 19 in the security agreement. *See Exhibit 1*. *See Williams v. Coulam*, 2010 Tex. App. LEXIS 4813 (Tex. App. Houston [1st Dist.] Jun. 24, 2010) ("to prevail on his breach of contract claim, therefore, Williams must establish that (1) a valid agreement exists; (2) **he performed under the Agreement**…"); *see Astrodome United States v. Dur United Entm't*, 1999 U.S. App. LEXIS 41027 (5th Cir. 1999) (specific element at issue was whether the plaintiff proved that it performed/tendered performance).

33. Paragraph 19 states:

> It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.
>
> As a precondition to taking any action premised on failure of Lender to comply,

10

> Borrower will advise Lender of the noncompliance by a notice given as required by Section 14 [notice to cure violations], and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required…**only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit**.

*See Exhibit 1*. (emphasis added).

34. Pursuant to the Deed of Trust, Central Mortgage had until February 9, 2014 to cure its constitutional errors. *See Exhibit 4*. Within 60 days, all it had to do was provide proof of an acknowledgement of fair market value that complied with §50(a)(6)(Q)(ix), refund $1,708.33 (the overcharged fees), or refund $1,000 to Mr. Billiter and offer him a chance to refinance his extension of credit for the remaining term of the loan. TEX. CONST. art. XVI, §50(a)(6)(Q)(x)(f). Central Mortgage ignored its opportunity to cure and has failed to take any corrective measures. It cannot point the finger at Plaintiff to allege a breach of the loan agreement when it has failed to perform its own contractual obligations.

35. Moreover, Defendant seeks a non-judicial foreclosure pursuant to TEX. CONST. art. XVI § 50(a)(6) and TEX. R. CIV. P. 735(3). This claim fails because this is an improper forum in which to bring a claim for foreclosure pursuant to TEX. R. CIV. P. 736. *Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 682 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (an "Application for Foreclosure" under TEX. R. CIV. P. 736 is part of a special expedited proceeding that does not contemplate an ordinary lawsuit).

36. As such, its claim for non-judicial foreclosure fails and Plaintiff is entitled to summary judgment as a matter of law.

  ii)  <u>Central Mortgage's Claim for Declaratory Relief Fails Because It Does Not Have a Valid Lien Against Mr. Billiter's Homestead</u>

37. The burden of proof rests on the party attempting to foreclose. The Texas Supreme Court has established that the bank has the burden to prove that a lien existed. *Hruska*, 747 S.W.2d at 784-85 ("A lien on a homestead **can be created only in the manner set out in the Constitution**…**First Bank had the burden to prove that a lien existed**.") (emphasis); *see also In re Chambers*, 419 B.R. 652, 670 (Bankr. E.D. Tex. 2009) ("the **home equity lender has the burden to prove that a lien exists** for some reason other than estoppel.") (emphasis); *see also In re Gulley*, 436 B.R. 878 (Bankr. N.D. Tex. 2010) (citing to *In re Chambers*).

38. Here, Central Mortgage claims that Mr. Billiter has breached the security agreement by defaulting and as such, Central Mortgage is entitled to foreclose. However, in a breach of contract case, the claimant must first show that a contract even **exists**. Central Mortgage cannot show that a valid lien exists because the evidence clearly shows that it violated §50(a)(6)(E) and §50(a)(6)(Q)(ix).

39. Central Mortgage has not performed all of its obligations under the agreement, and has no credible evidence to show that it has a valid lien against Mr. Billiter's homestead. As such, no genuine issue of fact exists on Central Mortgage's claim for declaratory judgment, and Plaintiff is entitled to summary judgment as a matter of law.

  iii)  <u>Central Mortgage's Claims for Bad Faith, Writ of Possession, and Attorney's Fees Fail as a Matter of Law.</u>

40. In addition to the aforementioned, Central Mortgage's claim for "bad faith" also fails because it has no support to show that Plaintiff's suit was filed in bad faith. Plaintiff is entitled to challenge the validity of a home equity loan based on clear constitutional defects. Plaintiff did not file this suit to stop a foreclosure proceeding. In fact, Central Mortgage never sent him a

notice of acceleration. *See Lloyd Billiter's Affidavit, attached as Exhibit 5*. There was no "foreclosure proceeding" to stop. Moreover, "bad faith" is not a cognizable legal theory.

41. Defendant claims a writ of possession as a result of its counterclaim for foreclosure. However, because its claim for foreclosure fails for reasons previously stated, Defendant's claim for writ of possession also fails.

42. Defendant's claim for attorney's fees fails because a home-equity loan is without recourse for personal liability against the homeowner. TEX. CONST. art. XVI, § 50(a)(6)(C); *see Erikson v. Wells Fargo Bank NA (In re Erikson)*, 2012 U.S. Dist. LEXIS 125601 (W.D. Tex. Sept. 24, 2012); *Murphy v. Wells Fargo Bank N.A.*, 2013 Tex. App. LEXIS 1485 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013) (holding that the lender's attorney fees cannot be assessed against the homeowners personally because the non-recourse status of the loan mandated that the homeowners were not personally liable for the attorney's fees the lender incurred).

43. The loan agreement at issue is based on a home-equity loan, which is non-recourse for personal liability against the borrower. *See Erikson*, 2012 U.S. Dist. LEXIS 125601. Therefore, Defendant's claim for attorney fees fails as a matter of law.

## V. CONCLUSION

44. Mr. Billiter is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. Section 50(a)(6) of the Texas Constitution forcefully protects the homestead, by requiring lenders to abide by its strict provisions. When a home equity lender fails to follow the Texas Constitution, the security agreement and the Constitution mandate forfeiture of the loan's principal and interest, and the lender must disgorge any money paid by the owner on the note.

45. Here, the documents plainly show that Central Mortgage failed to adhere to the Constitution's requirements and refused to timely correct the violations despite an opportunity to cure. Specifically, Defendant failed to comply with TEX. CONST. art. XVI, §50(a)(6)(E)'s 3% fee limitation, as well as TEX. CONST. art. XVI, §50(a)(6)(Q)(ix)'s requirement that the lender acknowledge the fair market value on the day of closing. Central Mortgage received a notice to cure those violations, yet failed to take any corrective action pursuant to the Texas Constitution and terms of the loan agreement. Consequently, Central Mortgage's home equity lien is void and it must disgorge any money Mr. Billiter has paid to it since the loan's inception.

46. WHEREFORE, Plaintiff respectfully prays that this Court grant his motion for summary judgment, and for such other and further relief to which Plaintiff may be justly entitled.

Dated: November 7, 2014                                Respectfully submitted,

**THE LANE LAW FIRM**

By: /s/ *Anh Thu N. Dinh*
Robert "Chip" C. Lane
State Bar No. 24046263
Anh Thu N. Dinh
State Bar No. 24071480
6200 Savoy, Suite 1150
Houston, Texas 77036
(713) 595-8200 Telephone
(713) 595-8201 Facsimile
*Attorney for Plaintiff/Counter-Defendant Lloyd Billiter*


## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon counsel of record, *via* facsimile and/or electronic service, on this 7th day of November, 2014:

                                          /s/ *Anh Thu N. Dinh*
                                          Anh Thu N. Dinh

Crystal G. Roach
Barrett Daffin Frappier Turner & Engel, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001
(972) 340-7901 – Telephone
(972) 341-0734 – Facsimile
*Counsel for Defendant/Counter-Plaintiff*
*Central Mortgage Company*