UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LLOYD BILLITER, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-cv-00663 |
| | § | |
| CENTRAL MORTGAGE COMPANY | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT CENTRAL MORTGAGE COMPANY'S REPLY TO PLAINTIFF'S RESPONSE TO CENTRAL MORTGAGE COMPANY'S FIRST AMENDED MOTION FOR FINAL SUMMARY JUDGMENT

Defendant Central Mortgage Company (hereinafter "Central" or "Defendant") files its Reply to Plaintiff's Response to Defendant's First Amended Motion for Summary Judgment (hereinafter "Response"), and in support thereof, Central respectfully shows the Court as follows:

### I.

### INTRODUCTION

1. Billiter's Response is insufficient as it fails to provide any competent summary judgment evidence to create a fact issue. Billiter attempts to create a fact issue by arguing that the home equity loan is void because it violated the Texas Constitution, and Central cannot foreclose unless it can prove it has a valid lien. Basically, Billiter makes the exact same argument he makes in his Motion for Summary Judgment with the exception of attaching his affidavit as summary judgment evidence. Here, he fails to attach his affidavit and simply refers to Central's summary judgment evidence and erroneously argues that the summary judgment evidence supports his position.

2. Specifically, Billiter argues that the fees charged at closing exceeded 3% of the loan

amount and that the acknowledgement of fair market value was not signed by the lender. However, Central's evidence conclusively establishes that the fees charges at closing did not exceed 3% of the loan amount, and the lender did, in fact, acknowledge fair market value of the Property. Billiter failed to provide any controverting summary judgment evidence that creates a fact issue with regard to Central's claims. As such, the uncontroverted summary judgment evidence establishes Central's claim, and Central is entitled to an order granting foreclosure and judgment dismissing Plaintiff's claims.

## II.

## SUMMARY OF ARGUMENT

***a.   The fees charged at closing did not exceed 3% of the loan amount.***

3. Billiter continues to assert that the discount points he both paid for and acknowledged were "points" on the HUD-1 at closing are categorized as fees, thereby causing the closing fees to exceed 3% of the loan amount. Billiter argues in his Response that Central "has no credible proof to confirm that the adjusted origination charge from Line 803 is the same as "points" from Line 802 [on the HUD]." Billiter's argument fails.

4. Billiter executed a "Discount Point Acknowledgment" that expressly states that he "elected to pay discount points in the amount of $2,297.81 in this extension of credit transaction in order to obtain a lower interest rate of $4.875%."[1] The "origination charge" in the amount of $2,297.81 that Billiter complains of in Lines 802 and 803 of the HUD is the exact amount he acknowledged he paid for discount points. As such, the Discount Point Acknowledgment Billiter executed at closing proves that the $2,297.81 charge was discount points and was properly excluded

---

1 *See* Exhibit A and A-1.

from the 3% limit.[2]

5. Billiter cites to a recent Texas Supreme Court case for the proposition that an "origination charge" is counted towards the 3% cap.[3] However, the *Norwood* case does not address whether discount points constitute an origination charge. *Norwood* was an evaluation of whether certain regulations promulgated by the Texas Finance Commission and the Credit Union Commission (hereinafter "Commissions") in relation to home equity lending were valid or invalid. The Supreme Court held that "the Commissions' interpretation of the fee cap, tying its meaning to a statute, utterly defeats the clear purpose of constitutionalizing it, which was to place the limitation beyond the Legislature's power to change without ratification by the voters."[4] *Norwood* in no way abrogated well-established existing case law that states that discount points are not fees.[5]

6. Central's evidence proves that Billiter acknowledged the $2,297.81 was paid for discount points in order to obtain a lower interest rate and is not calculated into the 3%. Accordingly, the total amount of fees charged at closing was $2,313.02, which is less than 3% of the total amount financed. As such, Central is entitled to summary judgment on its claims.

### b. *The lender acknowledged the fair market value of the homestead property on the date of closing.*

7 Billiter argues that the Acknowledgement of Fair Market Value (hereinafter "Acknowledgement") was not signed ***and notarized*** by the lender. This argument fails. Texas Constitution Section 50(a)(6)(Q)(ix) simply states that "the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the

---

2 *See Penrod v. Bank of New York Mellon,* 824 F.Supp.2d 754, 761 (S.D.Tex. 2011); *see also Poswalk v. GMAC Mortg., L.L.C.,* 519 Fed.Appx. 884, 886 (5th Cir. March 29, 2013).
3 *See Fin. Comm'n of Tex. v. Norwood,* 418 S.W.3d 566, 2014 Tex. LEXIS 97, 57 Tex. Sup. Ct. 222 (Tex. 2014)
4 *Id.* at 587.
5 *Tarver v. Sebring Capital Credit Corp.*, 69 S.W.3d 708,712 (2002); *see also Cerda v. 2004-EQR1 LLC,* 612 F.3d 781, 796 (5th Cir. 2010).

extension of credit is made."[6] It does not require that the acknowledgement be in the form of an affidavit.[7]

8. While a handwritten signature does not appear on the Acknowledgement, the lender's name, Royal United Mortgage, LLC (hereinafter "Lender") appears directly above the blank for the Lender's signature, which is consistent with other closing documents in the origination documents, thereby constituting the Lender's acknowledgement of fair market value.[8] "Texas recognizes typed or stamped signatures—and presumably also scanned signature—so long as they are rendered by or at the direction of the signer."[9]

9. Further, and more importantly, the Lender clearly relied on the fair market value and extended credit to Billiter as evidenced by the HUD-1 Statement as well as the execution of the Note.[10] Central's evidence proves that both Billiter and the lender executed a written acknowledgment as to the fair market value of the Property on the date the extension of credit was made. Therefore, the loan closed in compliance with Texas Constitution Art XVI, §50(a)(6)(Q)(ix), and Plaintiff's Summary Judgment must be denied.

## III.

## **PRAYER**

10. The uncontroverted summary judgment evidence establishes that Billiter is in default, and Central has the authority to proceed with a foreclosure on the Property. As such, Summary Judgment should issue for Central.

11. WHEREFORE, PREMISES CONSIDERED Central prays that the Court grant its

---

6 *See* Texas Constitution Art XVI, §50(a)(6)(Q)(ix).
7 *In re Ortegon,* 398 B.R. 431, 438 (W.D.Tex. 2008).
8 *See* Document 33, Exhibit 3.
9 *Reinagel v. Deutsche Bank National Trust Co.,* 735 F.3d 220, 227 (5th Cir. 2013).
10 *See* Document 32, Exhibits A-1 and A-7.

First Amended Motion for Summary Judgment, grant Central's request for non-judicial foreclosure and writ of possession, and for such other and further relief to which Central may show itself to be justly entitled.

Respectfully submitted,

**BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP**

By: */s/ Crystal G. Roach*
Crystal G. Roach
State Bar No. 24027322
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001
972-340-7901
972-341-0734 (Facsimile)
CrystalR@bdfgroup.com

**ATTORNEYS FOR DEFENDANT CENTRAL MORTGAGE COMPANY**

## CERTIFICATE OF SERVICE

I certify that I mailed a copy of this Reply to Plaintiff's Response to Defendant's First Amended Motion for Summary Judgment via the Court's ECF filing system on the 31st day of December, 2014.

Robert Y. Petersen
6200 Savoy Drive, Suite 1150
Houston, TX 77036

/s/Crystal G. Roach
Crystal G. Roach