IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LLOYD BILLITER, JR.,               §
                                   §
          Plaintiff,               §
                                   §
                                   §
v.                                 §        CIVIL ACTION NO. H-14-663
                                   §
CENTRAL MORTGAGE COMPANY,          §
                                   §
          Defendant.               §

**<u>MEMORANDUM OPINION</u>**

Pending before the court[1] is Defendant Central Mortgage Company's ("Defendant") Amended Motion for Summary Judgment (Doc. 32) and Lloyd Billiter, Jr., ("Plaintiff")'s Motion for Final Summary Judgment (Doc. 33). The court has considered the motions, the responses thereto, all relevant filings, and the applicable law. For the reasons set forth below, Defendant's motion is **GRANTED** in part and **DENIED** in part, and Plaintiff's motion is **DENIED**.

## I.  Case Background

On January 25, 2011, Plaintiff obtained a home equity loan in the amount of $96,750.00.[2]  On September 14, 2012, Plaintiff

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure ("Rule") 73. Docs. 10, 11.

[2]    <u>See</u> Doc. 32-1, Ex. A-1 to Def.'s Am. Mot. for Summ. J., Home Equity Note.

was sent a letter advising him that he was in default on his
note.[3]  On January 8, 2013, the original lender assigned the deed
of trust to Defendant.[4]

On June 21, 2013, Defendant's agent mailed Plaintiff a
letter stating that Plaintiff remained in default and that
Defendant had elected to accelerate the maturity of the debt.[5]

Plaintiff responded by sending Defendant a notice of request
to cure on December 11, 2013, claiming multiple violations of the
Texas Constitution and demanding that Defendant cure all
violations within sixty days.[6]

On December 23, 2013, Defendant responded to Plaintiff's
notice.[7]  Defendant denied any violations of the Texas
Constitution but did provide copies of closing documents as
requested by Plaintiff.[8]  On February 7, 2014, Defendant

---

[3]   See Doc. 32-5, Ex. A-4 to Def.'s Am. Mot. for Summ. J., Notice of
Default Letter.

[4]   See Doc. 32-4, Ex. A-3 to Def.'s Am. Mot. for Summ. J., Assignment
of Deed of Trust.

[5]   See Doc. 32-14, Ex. B-1 to Def.'s Am. Mot. for Summ. J., Letter Dated
June 21, 2013.

[6]   See Doc. 32-6, Ex. A-5 to Def.'s Am. Mot. for Summ. J., Request to
Cure Letter.

[7]   See Doc. 32-7, Ex. A-6 to Def.'s Mot. for Summ. J., Dec. 23, 2013
Response to Request to Cure Letter.

[8]   See id.

supplemented its December 23, 2013 response.[9]

Plaintiff filed a petition in Harris County District Court on February 11, 2014, alleging violations of the Texas Constitution, breach of contract, and seeking a declaratory judgment voiding the loan.[10]   On March 17, 2014, Defendant removed the case to this court based on diversity jurisdiction.[11]

On May 8, 2014, Defendant filed its answer and counterclaim, alleging bad faith and seeking a declaratory judgment that it had a valid lien on Plaintiff's property, and that it was entitled to a non-judicial foreclosure, a writ of possession, and attorney's fees.[12]

On May 19, 2014, Defendant filed a motion for summary judgment.[13]   On June 19, 2014, Plaintiff filed a motion for judgment on the pleadings.[14]   On October 8, 2014, the court denied both Plaintiff and Defendant's motions and allowed both parties to refile their motions by November 7, 2014.[15]

---

[9]   See Doc. 32-7, Ex. A-6 to Def.'s Mot. for Summ. J., Feb. 6, 2014 Supplemental Response to Request to Cure Letter.

[10]   See Doc. 1-3, Ex. 3 to Def.'s Notice of Removal, Pl.'s State Court Pet.

[11]   See Doc. 1, Def.'s Notice of Removal.

[12]   See Doc. 15, Def.'s Answer & Countercl.

[13]   See Doc. 17, Def.'s Mot. for Summ. J.

[14]   See Doc. 25, Pl.'s Mot. for J. on the Pleadings.

[15]   See Doc. 31, Order Den. Mot. for Summ. J. and J. on the Pleadings.

3

On November 6, 2014, the parties filed the present motions.

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Pustejovsky v. Pliva, Inc., 623 F.3d 271, 277 (5th Cir. 2010).   A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Chiu v. Plano Indep. School Dist., 260 F.3d 330, 342 (5th Cir. 2001).  If the moving

4

party can show that the facts are not in dispute, the party opposing summary judgment must go beyond the pleadings and proffer evidence demonstrating that genuine issues of material fact do exist that must be resolved at trial.   See Celotex Corp., 477 U.S. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).   The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

Even when a nonmovant fails to respond to a motion for summary judgment, the movant still bears the burden of proving that no issue of material fact exists. Celotex, 477 U.S. at 323. However, the court will only resolve factual controversies in favor of the nonmoving party when a controversy actually exists; in other words, no controversy exists when factual allegations are not challenged by the nonmoving party. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (relying on Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990)).

Therefore, assumptions or inferences that the nonmoving party could or would prove the necessary facts will not be made. Id.

### III. Analysis

#### A. Evidentiary Issues

Prior to considering Plaintiff and Defendant's motions, the court addresses the admissibility of Plaintiff's November 5, 2014 affidavit filed in support of his summary judgment motion.

Defendant objects to Plaintiff's affidavit as conclusory, inconsistent with prior pleadings, and containing hearsay. Plaintiff did not respond to Defendant's objections.

Defendant argues that Plaintiff's statements in the affidavit contradict the factual allegations of his pleading. It is well-settled that the court does not have to consider an affidavit that impeaches the declarant's prior sworn testimony. S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996). However, Plaintiff's petition is not sworn testimony, and the court need not consider pleadings as affidavits unless they meet the requirements of Federal Rule of Civil Procedure ("Rule") 56(e). See Fed. R. Civ. P. 56(e); Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 80 (5th Cir. 1987). Defendant's objection based on inconsistent testimony is overruled.

Defendant further argues that Plaintiff's statements in paragraphs six and eight contain inadmissible hearsay. In paragraph six, Plaintiff states that "I was told by the loan advisor . . . that I received this interest rate because of my credit rating at the time, and because I opted for a fifteen-years maturity date and payment plan, rather than thirty years [sic]. I did not pay a fee in exchange for getting a low interest rate."[16] In paragraph eight, Plaintiff states that "I was told that if I wanted to receive the loan, I had no choice but to sign this acknowledgment." The court finds that Plaintiff's statements, relating the out-of-court statements of a non-party, are inadmissible hearsay, and sustains Defendant's objection.

Finally, Defendant argues that Plaintiff's affidavit contains conclusory statements without a factual basis. In paragraph four, Plaintiff states that he was charged fees of "around almost five percent" because he did not know the lender was not allowed to charge him more than three percent.[17] This statement is inadmissible, as Plaintiff is speculating as to the reason he was charged a fee. See Fed. R. Evid. 701. It also

---

[16] Doc. 33-5 Ex. 5 to Pl.'s Mot. for Final Summ. J, Aff. of Lloyd Billiter p. 1-2.

[17] Doc. 33-5 Ex. 5 to Pl.'s Mot. for Final Summ. Summ. J, Aff. of Lloyd Billiter p. 1.

purports to state a conclusion of law by interpreting discount points as closing fees. Unsupported affidavits setting forth conclusions of law are insufficient to either support or defeat a motion for summary judgment. <u>Galindo v. Precision Am. Corp.</u>, 754 F.2d 1212, 1221 (5th Cir. 1985). Defendant's objections regarding those statements are sustained, and the court will not consider paragraph four, or the hearsay contained within paragraphs six and eight in its analysis.

**B. <u>Motions for Summary Judgment</u>**

Both Plaintiff and Defendant have moved for summary judgment. Plaintiff argues that Defendant committed multiple violations of the Texas Constitution and thereby breached its contract with Plaintiff. Plaintiff also seeks a declaratory judgment finding that the mortgage lien associated with the January 25, 2011 equity note is void. Defendant seeks a declaratory judgment, non-judicial foreclosure, and a writ of possession related to Plaintiff's default on the note payments. Both parties seek to recover attorney's fees. The court will consider the parties' claims in turn.

**1. <u>Texas Constitution Claims</u>**

Plaintiff claims that Defendant violated six provisions of the Texas Constitution and moves for summary judgment based on

8

two of the six violations.  Defendant moves for summary judgment on each of Plaintiff's six claims.

### a. **Fair Market Value**

Plaintiff alleges that the principal amount of the loan, $96,750.00, exceeded eighty percent of the fair market value of the home, in violation of Article XVI, Section 50(a)(6)(B) of the Texas Constitution.  In his complaint, Plaintiff stated that the Harris County Appraisal District valued the home at $110,863.00, thus, the loan amount of $96,750.00 was in excess of the eighty percent rule.

Defendant responds that the appraisal value is not the fair market value, and that the fair market value of the property was $129,000.  In support, Defendant cites to an acknowledgment of fair market value signed by Plaintiff on January 25, 2011, wherein he confirmed that the fair market value of the property was $129,000 at the time of loan.[18]  Eighty percent of the fair market value was $103,200.  Plaintiff does not contest this acknowledgment in his motion or responses.

Based on Plaintiff's acknowledgment that the fair market value of the property was $129,000, the court finds that there is no genuine issue of material fact that the loan did not violate

---

[18]    See Doc. 32-10, Ex. A-9 to Def.'s Am. Mot. for Summ. J., Acknowledgment of Fair Market Value.

9

the eighty percent limitation found in Article XVI, Section 50(a)(6)(B) of the Texas Constitution.

      **b.** **Three Percent Rule**

Plaintiff alleges that Defendant violated the Texas Constitution, Article XVI, Section 50(a)(6)(E), which provides that a lender on a home equity loan may not charge a borrower fees "that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit" ("the three percent rule").  Id.

In this case, the total amount of the loan was $96,750.00, therefore Defendant could not charge fees in excess of $2,902.50 without violating the three percent rule.  Plaintiff argues that Defendant actually charged fees in the amount of $4,610.83.[19] Defendant contends that Plaintiff mischaracterizes $2,297.81 of discount points as fees.

In Cerda v. 2004-EQR1 L.L.C., 612 F.3d 781, 794 (5th Cir. 2010), the Fifth Circuit held that discount points paid in a home equity loan should not have been characterized as loan origination fees and included the three percent cap on fees.  Id.

---

[19]   See Doc. 34, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 6. Originally, Plaintiff stated that it was charged fees of $7,505.10.  See Doc. 1-3, Ex. 3 to Not. of Removal, Pl.'s Original Pet. p. 9.

The court held that discount points are a form of interest, and therefore not considered fees for the purposes of the three percent rule. Id. at 794-95.

Plaintiff argues that the disputed $2,297.81 was an origination fee, not discount points, and that Defendant has "no credible proof" that the $2,297.81 in listed as discount points in one part of the settlement statement are the same as an "origination charge" in an identical amount within the same document.[20] Plaintiff argues that the Texas Supreme Court has ruled in Fin. Comm'n of Tex v. Norwood, 418 S.W. 566 (Tex. 2014), that lenders are prohibited from excluding discount points from the three percent rule "unless the points were legitimate and true."[21] In Norwood, the Texas Supreme Court included a supplemental opinion to clarify that discount points paid to lower an interest rate substitute for interest "and thus are not subject to the [three percent] cap." Id. at 596.

The court is not convinced by Plaintiff's argument in light of the closing documents. Here, the HUD-1 Settlement Statement, Line 801, states that the "origination charge" for the loan is "$0.00."[22]  Line 802, "Your credit or charge (points) for the

---

[20]   See Doc. 34, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 5.

[21]   See id. p. 8.

[22]   See Doc. 1-3, Ex. 5 to Doc. 1, Not. of Removal, Settlement Statement, p. 31.

specific rate chosen," shows $2,297.81.  The next line, Line 803, adds both Lines 801 and 802, characterizes the sum as "adjusted origination charges" and shows $2,297.81.[23]  The clear reading of the document shows that $2,297.81 is for points, not an origination charge.  Further, Defendant produced a "Discount Point Acknowledgment," signed by Plaintiff, confirming that Plaintiff would pay $2,297.81 in discount points in exchange for a lower interest rate.[24]

The court finds that the $2,297.81 represented discount points.  As discount points are not included in the three percent rule, the court finds there is no genuine issue of material fact that Plaintiff's fees for the purposes of Article XVI, Section 50(a)(6)(E) of the Texas Constitution were less than three percent of the loan principal.

### c.  **The Twelve Day Rule**

Plaintiff alleges the loan violated Article XVI, Section 50(a)(6)(M) of the Texas Constitution by closing within twelve days of the original loan application.  Defendant responds that Plaintiff submitted his loan application on November 29, 2010, signed the application on November 30, 2010, and closed on the

---

[23]     Id.

[24]     See Doc. 38-1, Ex. A-1 to Def.'s Reply to P's Resp., Discount Point Acknowledgment.

loan on January 25, 2011.[25]   The loan application shows that
Plaintiff signed and dated the application on November 30, 2010
in three separate places.[26]   Additionally, Plaintiff signed an
acknowledgment of receipt of notice concerning extensions of
credit, wherein Plaintiff acknowledged that he was provided his
application for an extension of credit at least twelve days prior
to the acknowledgment.[27]   Plaintiff did not contest this issue in
his motion or his replies.   The court finds no genuine dispute of
material fact that the loan closed more than twelve days after
Plaintiff's loan application.

> ### d.  <u>Receipt of HUD-1 Statement</u>

In his complaint, Plaintiff argues that he did not receive a
HUD-1 statement one day before closing as required by Article XVI
Section 50(a)(6)(M)(ii) of the Texas Constitution because the
HUD-1 statement was provided and signed at closing.   Defendant
argues that Plaintiff signed a sworn statement acknowledging he
received a copy of the settlement statement prior to the closing,
and that the fees and charges on that statement were identical to

---

[25]   <u>See</u> Doc. 32-11, Ex. A-10 to Def.'s Am. Mot. for Summ. J., Uniform
Residential Loan Application.

[26]   <u>Id.</u>

[27]   <u>See</u> Doc. 32-7, Ex. A-6 to Def.'s Am. Mot. for Summ. J.,
Acknowledgment of Receipt of Notice Concerning Extension of Credit.

the amounts disclosed at the closing.[28]   As Plaintiff does not dispute this sworn statement, the court finds there is no genuine issue of material fact regarding Plaintiff's receipt of the HUD-1 statement one day prior to the loan's closing.

### e.  Receipt of Loan Documents

Plaintiff alleges that he did not receive a copy of the final loan documents, in violation of Article XVI, Section 50(a)(6)(Q)(v) of the Texas Constitution.   Defendant responds that Plaintiff signed an acknowledgment stating that he had received copies of all documents related to the loan.[29] Additionally, the record indicates that before filing suit, Defendant provided Plaintiff with copies of loan documents after Plaintiff requested them.[30]   Plaintiff does not respond to Defendant's evidence in either its motion or its responses. Thus, there is no dispute of material fact that Plaintiff was provided a copy of the final loan documents as required by the Texas Constitution.

---

[28]   See Doc. 32-12, Ex. A-11 to Def.'s Am. Mot. for Summ. J., Owner's Acknowledgment of Receiving Copy of Loan Application and Fees.

[29]   See Doc. 32-13, Ex. A-12 to Def.'s Am. Mot. for Summ. J., Acknowledgment of Receipt of Notice Concerning Extensions of Credit and Receipt of Documents.

[30]   See Doc. 32-7, Ex. A-6 to Def.'s Am. Mot. for Summ. J., Dec. 23, 2013 Letter.

14

### f. __Acknowledgment of Fair Market Value__

Finally, Plaintiff argues that either he did not execute an acknowledgment of fair market value, or that such an acknowledgment was not provided to him as required by Article XVI, Section 50(a)(6)(Q)(ix) of the Texas Constitution. In response, Defendant produced an acknowledgment of fair market value signed by Plaintiff but not signed by a lender's representative.[31]

While Plaintiff does not dispute his signature on the fair market value agreement, Plaintiff argues that a blank signature line on the form indicates that Defendant never executed the acknowledgment of fair market value.[32] Plaintiff also argues that the fair market value acknowledgment was not notarized.[33] In response, Defendant argues a line identifying the lender functions as an electronic signature, and that there is no notarization requirement under the Texas Constitution.[34] Defendant further argues that the lender acknowledged the fair market value because it extended the loan to Plaintiff.[35]

---

[31]    See Doc. 32-10, Ex. A-9 to Def.'s Am. Mot. for Summ. J., Acknowledgment of Fair Market Value.

[32]    See Doc. 34, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 7.

[33]    See id.

[34]    See Doc. 36, Def.'s Resp. to Pl.'s Mot. for Final Summ. J. p. 5.

[35]    Id.

The Texas Constitution states that a homestead is protected from a forced sale except when an extension of credit made where "the owner of the homestead and the lender sign a written acknowledgment as to the fair market value" of the property. Tex. Const. Art. XVI § 50(a)(6)(Q)(ix). Plaintiff appears to confuse an acknowledgment of fair market value with an acknowledgment of a written instrument; Defendant is correct that there is no requirement that the agreement be notarized. See id.; see also In re Ortegon, 398 B.R. 431, 439-40 (Bankr. W.D. Tex. 2008) (holding that the statute "does not require the acknowledgment to be in the form of an affidavit").

However, the court is not convinced by Defendant's argument that an unsigned line identifying the lender functions as a signature. Defendant relies on the Fifth Circuit's statement that "Texas recognizes typed or stamped signatures— and presumably also scanned signature— so long as they are rendered by or at the discretion of the signer." Reinagel v. Deutsche Bank Nat'l Trust Co., 735 F.3d 220, 227 (5th Cir. 2013). A signature generally requires some mark or sign showing an intent to be bound by the document. See Tex. Bus. Orgs. Code Ann. § 1.002(82) ("Signature means any symbol executed or adopted by a person with present intention to authenticate a writing"). Here,

Defendant does not present any evidence of intention to authenticate a writing in the acknowledgment of fair market value.

Section 50 of Article XVI of the Texas Constitution provides that if there is a violation of a term within the section, a lender can cure the defect by delivering the required documents or obtaining appropriate signatures within sixty days of being notified of such violation. <u>See</u> Tex. Const. Art. XVI § 50(a)(6)(Q)(x)(d). A lender who complies with this provision is considered to have timely cured the alleged violation. <u>See</u> Tex. Admin. Code § 153.95 (2004).

It is undisputed that Plaintiff provided notice to Defendant via Plaintiff's December 11, 2013 notice of a request to cure.[36] Plaintiff argues that Defendant had until February 9, 2014, to cure any defects, but failed to take "any corrective measures."[37] However, Defendant provided evidence that on December 23, 2013, and again on February 7, 2014, it produced documents requested by Plaintiff, including an acknowledgment of fair market value signed by both Plaintiff and lender's representative.[38] Thus, if

---

[36]   <u>See</u> Doc. 1-3, Ex. 3 to Doc. 1, Not. of Removal, Pl.'s Original Pet. p. 3; Doc. 32-6, Ex. A-5 to Doc. 32, Def.'s Am. Mot. for Summ. J., Notice of Request to Cure.

[37]   <u>See</u> Doc. 33, Pl.'s Mot. for Final Summ. J. p. 11.

[38]   <u>See</u> Doc. 32-7, Ex. A-6 to Doc. 32, Def.'s Am. Mot. for Summ. J., Acknowledgment of Fair Market Value.

there had been any violation of the Texas Constitution related to the acknowledgment of fair market value, there is no genuine issue of material fact that such violation was corrected before Plaintiff filed his original petition.

Because Plaintiff cannot raise an issue of material fact regarding any of his claims, the court **GRANTS** Defendant's motion for summary judgment relating to Plaintiff's claims arising under the Texas Constitution.

### 2.   <u>Declaratory Judgment and Attorney's Fees</u>

Plaintiff moves for a declaratory judgment voiding the lien and also seeks attorney's fees under Chapter 37 of the Texas Civil Practice and Remedies Code.   Defendant argues that as Plaintiff has no viable affirmative claims, he is not entitled to void the lien.   The court agrees.

When a declaratory judgment action is filed in state court and is later removed to federal court, it is converted to an action brought under the federal Declaratory Judgment Act.   28 U.S.C. §§ 2201, 2202.   The federal Declaratory Judgment Act is a procedural device that does not create substantive rights, but requires the existence of a justiciable controversy.   <u>Bell v. Bank of Am. Home Loan Serv. LP</u>, Civil Action No. H-11-2085, 2012 WL 568755, *8 (S.D. Tex. 2012) (unpublished).   A declaratory

18

judgment action thus requires a substantial and continuing controversy between two parties. <u>Bauer v. Texas</u>, 341 F.3d 3582, 358 (5th Cir. 2003). Here, as Plaintiff has no viable claims against Defendant, Plaintiff cannot maintain a declaratory judgment action, or obtain attorney's fees as a prevailing party.

### 3. **Defendant's Counterclaim**

Finding that Plaintiff has not presented an issue of material fact with respect to his claims, the court next considers Defendant's requests for non-judicial foreclosure, a writ of possession, a declaratory judgment confirming the lien, and attorney's fees.[39]

### a. <u>Non-Judicial Foreclosure</u>

Defendant seeks non-judicial foreclosure pursuant to Article XVI, Section 50(a)(6). Plaintiff responds that Defendant's motion should be rejected because: (1) Defendant does not have a valid lien; (2) this court is an improper forum to bring a foreclosure claim; and (3) Defendant has not properly accelerated Plaintiff's loan.

The court finds there is no genuine dispute that Defendant has a valid lien. Defendant has produced evidence that the lien was assigned to it, and Plaintiff's Texas Constitution claims

---

[39] Defendant has abandoned its bad faith claim. <u>See</u> Doc. 36, Def.'s Resp. to Pl.'s Mot. for Summ. J., p. 6.

have been resolved in its favor.[40]

Plaintiff next argues that this court is an improper forum based on <u>Huston v. U.S. Bank Nat'l Ass'n</u>, 359 S.W.3d 679 (Tex. App.– Houston [1st Dist.] 2011, no pet.), which held that an application for foreclosure is part of a special expedited proceeding that does not contemplate the procedures of an ordinary lawsuit. <u>Id.</u> at 682. However, <u>Huston</u> sets out the three options that a party seeking to foreclose may employ under either Texas Rule of Civil Procedure 735 or 736: "(1) a suit seeking judicial foreclosure; (2) a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and Tex. Prop. Code § 51.002; or (3) an application under Rule 736 for an order allowing foreclosure." <u>Id.</u>

Here, Defendant filed a counterclaim seeking a final judgment including an order allowing foreclosure. This appears to be an option permitted by <u>Huston</u> and the court finds that it is a proper forum to grant the relief requested. <u>See also</u> <u>Huston v. U.S. Bank Nat'l Ass'n</u>, 988 F.Supp.2d 732, 740 (S.D. Tex. 2013) (allowing bank to pursue a counterclaim for an order

---

[40]    <u>See</u> Doc. 32-4, Ex. A-3 to Def.'s Am. Mot. for Summ. J., Assignment of Deed of Trust.

of foreclosure).

Finally, Plaintiff alleges that Defendant has not properly accelerated the loan.   In response, Defendant presents an affidavit stating that on June 21, 2013, Defendant's agent mailed three notices of acceleration to Plaintiff.[41]   Two notices were mailed to Lloyd Byrl Billiter, 6734 West Greens Road, Houston, Texas, 77066, and one notice was mailed to Lloyd Byrl Billiter, Jr., c/o JLJ Financial & Consulting, LLC, Attn: David Givens, 2061 NW 2nd Ave, Ste. 205, Boca Raton, Fla., 33431.[42]

Plaintiff avers that he did not receive the latter notice because it was not addressed to him and, even if he had, it presented a notice of default for less than the total balance, in support of his contention that the note has not been accelerated.[43]

In order to effect a valid foreclosure, the holder of a note in default must provide: (1) a notice of intent to accelerate with demand for payment and time to cure; (2) notice of acceleration; and (3) notice of a foreclosure sale at least twenty-one days before the sale and at least twenty days after

---

[41]   See Doc. 32-14, Ex. B to Def.'s Reply to Pl.'s Mot. for Summ. J., Aff. of Becky Howell.

[42]   Id.

[43]   See Doc. 41-2, Ex. 2 to Pl.'s Surreply to Def.'s Am. Mot. for Summ. J., Notice of Default Letter dated May 6, 2014.

notice of default.  Clark v. FCIC, 849 F. Supp. 2d 736, 742 (S.D. Tex. 2011); Ogden v. Gibraltar Sav. Ass'n, 640 S.W.2d 232, 233 (Tex. 1982).  Both the notice of intent to accelerate and the notice of acceleration must be "clear and unequivocal."  Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001).

Under the Texas Property Code § 51.002(e), "service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address."

The court finds there is no dispute of material fact that Defendant mailed the letter to Plaintiff as required under 51.002(e).  Defendant has offered evidence that it mailed three copies of the notice, including two sent to Plaintiff's home address.  Plaintiff disputes only the receipt of the one letter *not* addressed to him, not the two that were mailed to his home address.  There is therefore no genuine issue of material fact that Defendant's June 21, 2013 letter constituted effective service.

However, in order to effect a valid foreclosure, Defendant must establish that it has sent both a notice of intent to accelerate and a notice of acceleration.  Clark, 849 F. Supp. 2d

22

at 742.  The June 21, 2013 letter states that "the holder of the note has elected to accelerate the maturity of the debt."[44] Defendant attaches a sworn statement made by an agent of Defendant who serviced Plaintiff's loan, stating that the letter was a "notice to accelerate."[45]

Despite this assertion, it is unclear from the record whether the June 21, 2013 letter was a notice of intent to accelerate or a notice of acceleration.  Defendant's letter is not identified as a notice of acceleration, does not request the full unpaid balance of Plaintiff's loan, and does not provide twenty days to cure the unpaid balance in order to avoid potential foreclosure as stipulated by the Texas Property Code. See Tex. Prop. Code § 51.002(d).  Additionally, a valid foreclosure requires both a notice of intent to accelerate and a notice of acceleration.  In support of its right to foreclose, Defendant has produced only a notice of default and the June 21, 2013 letter.[46]

Further, in support of his position that Defendant has not

---

[44]    Doc. 32-14, Ex. B-1 to Def.'s Am. Mot. for Summ. J., Letter Dated June 21, 2013.

[45]    See Doc. 32-14, Ex. B to Def.'s Am. Mot. for Summ. J., Aff. of Becky Howell p. 3.

[46]    See Doc. 32-5, Ex. A-4 to Def.'s Am. Mot. for Summ. J., Notice of Default Letter dated Sept. 14, 2012; Doc. 32-14, Ex. B-1 to Def.'s Am. Mot. for Summ. J., Letter dated June 21, 2013.

accelerated the note, Plaintiff has produced a letter dated May 6, 2014, that demands a past-due balance of $27,336.04, rather than the accelerated balance of the loan.[47]   Plaintiff states that he has not received a subsequent acceleration letter following the May 6, 2014 notice of default.[48]

Because Defendant has not produced clear and unequivocal evidence that it provided both a notice of intent to accelerate and notice of acceleration, and because Plaintiff has produced evidence inferring that the loan has not been accelerated, the court finds that Defendant cannot show that it is entitled to foreclosure as a matter of law.

### c.  Declaratory Judgment and Writ of Possession

Defendant seeks a declaratory judgment stating that Plaintiff is entitled to proceed with foreclosure.   Defendant also requests a writ of possession.   Because Defendant has not established that it is entitled to judgment as a matter of law with respect to its foreclosure claim, the court rejects Defendant's request for a declaratory judgment and writ of possession at this time.

---

[47]   See Doc. 41-2, Ex. 2 to Pl.'s Surreply to Def.'s Am. Mot. for Summ. J., Notice of Default Letter dated May 6, 2014.

[48]   See Doc. 41-1, Ex. 1 to Pl.'s Surreply to Def.'s Am. Mot. for Summ. J., Aff. of Lloyd Billiter.

### d.  Attorney's Fees and Costs

Defendant seeks attorney's fees under Section 38.001 of Texas Civil Practice and Remedies Code. Plaintiff responds that Defendant is not entitled to attorney's fees because home equity loans are non-recourse and Defendant is thus not entitled to collect attorney's fees from Plaintiff.

Under Texas contract law, a party may recover attorney's fees when such recovery is provided by statute or by contract. In re Velazquez, 660 F.3d 893, 895-96 (5th Cir. 2011). Home equity loans are non-recourse and preclude contractual mortgagor liability. Tex. Const. Art. XVI § 50(a)(6)(C); Huston, 988 F. Supp. 2d at 741. While the mortgagor may not be held personally liable for attorney's fees, the mortgagee may recover its attorney's fees, if permitted by contract, against the property after a foreclosure sale. Huston, 988 F. Supp. 2d at 741.

Here, Defendant has not established that it is entitled to judgment as a matter of law regarding foreclosure. The court therefore denies Defendant's claim for attorney's fees at this time.

### IV.  Conclusion

Based on the foregoing, Defendant's Amended Motion for Summary Judgment (Doc. 32) is **GRANTED** in part and **DENIED** in part, and Plaintiff's Motion for Final Summary Judgment (Doc. 33)

25

is **DENIED**.

Defendant's counterclaim for non-judicial foreclosure will be set for trial. The court may reconsider its motion with respect to Defendant's foreclosure claim if Defendant can produce unequivocal evidence that the requirements of the Texas Property Code have been met within ten days of receipt of this order.

**SIGNED** in Houston, Texas, this 17th day of February, 2015.

_____
U.S. MAGISTRATE JUDGE